# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| TERESA ANN WILEY, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. CIV-13-534-FHS-SPS |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Teresa Ann Wiley requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 25, 1968, and was forty-five years old at the time of the administrative hearing (Tr. 33). She completed high school, earned a certificate as a medical assistant, and has worked as a receptionist and office manager (Tr. 65, 171). The claimant alleges she has been unable to work since July 5, 2011, due to fibromyalgia, asthma, diabetes, and dysplasia/abnormal pap smears (Tr. 170).

## Procedural History

On September 8, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Bernard Porter held an administrative hearing and determined the claimant was not disabled in a written decision dated July 26, 2013 (Tr. 11-23). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of light work, *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk/sit six hours in an eight-hour workday, and push/pull within the

limitations of light exertion, with the additional limitations of: (i) being unable to climb ladders/scaffolds or crawl; (ii) must be allowed to alternate between sitting and standing at least every 30 minutes; (iii) should avoid unprotected heights or working near hazardous machinery; and (iv) avoiding environments with hot and cold temperature extremes (Tr. 16). The ALJ further stated that the claimant would be off task approximately 5% of the workday, which could be accommodated by normal work breaks, and would miss approximately one day of work per month due to episodic symptoms (Tr. 16). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economy that she could perform, *e. g.*, office helper, cashier II, and arcade attendant (Tr. 22).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly assess the treating physician opinion of Dr. Richard Hinkle, and (iii) by failing to properly assess her RFC. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of coronary artery disease, angina pectoris, hypertension, fibromyalgia, asthma, diabetes mellitus with lower extremity neuropathy, morbid obesity, anxiety disorder, and depression disorder (Tr. 13). The medical evidence reveals that the claimant was admitted to the hospital on October 6, 2011, following complaints of chest pain. She underwent angiography that revealed mild

coronary disease (nonobstructive coronary artery disease), and was discharged to the care of her treating physician (Tr. 282-322).

Dr. Hinkle, the claimant's treating physician, has treating notes that largely consist of notes related to treatment of her hypertension (Tr. 248-262). On May 17, 2011, the claimant was negative for chest pain, but complained of hurting all over, and he noted that she had a history of diffuse pain in her joints and soft tissue, as well as a possible "element of fibromyalgia" (Tr. 252-254). He noted complaints of bilateral feet tingling, aches and pains on July 25, 2011 (Tr. 248). In October 2011 following her myocardial infarction, Dr. Hinkle saw her and noted that she was positive for chest pain and back pain (Tr. 337-338). In November 2011, he again noted that she was positive for generalized weakness, dizziness, near syncope, bone/joint symptoms, back pain, and myalgia, but he appeared more concerned with treatment for her hyperlipidemia, diabetes mellitus, and hypertension that seemed to be worsening (Tr. 329-336). From 2012 to 2013, Dr. Hinkle continued to treat the claimant and indicated fibromyalgia as a diagnosis and prescribed related pain medications. On August 28, 2012, he noted that the claimant had been walking a half mile in the evenings, and told her to continue doing so (Tr. 405). Additionally, on October 16, 2012, he noted that the claimant's right shoulder could only abduct 45 degrees, with pain, and that she had an abnormal mood/affect in February 2013 (Tr. 410, 415). Dr. Hinkle completed a Fibromyalgia Residual Functional Capacity Questionnaire on March 20, 2013, in which he indicated that he had known the claimant since 1993, seeing her for routine follow-up visits (Tr. 424). He stated that her prognosis was guarded, and indicated that the claimant's symptoms included: multiple

tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, numbness and tingling, breathlessness, anxiety, depression, carpal tunnel syndrome, and chronic fatigue syndrome (Tr. 424). He checked on the form that emotional factors contributed to her symptoms and functional limitations, that she had bilateral pain in every available area, that her symptoms frequently interfered with attention and concentration, and that she had a marked limitation in the ability to deal with work stress (Tr. 425). He estimated that she could sit ten minutes at a time, stand five to ten minutes at a time, and walk five minutes at a time, that she could sit two hours total in an eight-hour workday and stand/walk less than two hours total, lift up to ten pounds occasionally, and that she would need to be able to shift positions at will and take unscheduled work breaks (Tr. 425-426). Finally, he checked on the form that she would likely be absent from work more than three times a month due to her impairments (Tr. 426).

Dr. Hinkle referred the claimant to a rheumatologist, Dr. James Deneke, who stated that her history and examination were consistent with a "fibromyalgia type problem" aggravated by deconditioning, and that it could take six to twelve months to see how she would do (Tr. 429). He discussed possible adjustments to her medications, and talked with the claimant "about proper posturing, common sense in her activities, and certainly a regular stretching program and appropriate conditioning program" (Tr. 429).

On January 19, 2012, Dr. Ronald Schatzman, M.D., examined the claimant and assessed her with diabetes mellitus, morbid obesity, fibromyalgia by history, coronary artery disease by history, anxiety by history, and depression by history (Tr. 344). At the

exam, the claimant reported chest pain for the past five months, but denied asthma and shortness of breath, and Dr. Schatzman found the claimant had a full range of motion and zero out of eighteen possible positive fibromyalgia tender points (Tr. 344).

As to the claimant's mental impairments, state reviewing physicians found insufficient evidence of limitations according to the psychiatric review technique (Tr. 363, 373-400).

At the administrative hearing, the claimant testified that she stopped working in 2011 due to her fibromyalgia and side effects from medications that made it difficult to get up in the mornings. She further stated that although she was not diagnosed with fibromyalgia until 2011, the pain began back in 2006 or 2007 and was described as arthritic (Tr. 36-37, 44). She testified that she believes pain and burning in her feet from the fibromyalgia prevent her from working (Tr. 43). She rated her pain on an average day at a seven on a scale of ten (Tr. 48). She stated that she tried physical therapy but that it neither helped nor made her symptoms worse (Tr. 49). She testified that she can sit about fifteen minutes at a time, then has to stand up, and that she could sit for approximately one third of the day (Tr. 52). In discussing what she can do with her pain, the claimant stated that she would have to take both oxycodone and Neurontin to be able to sit fifteen minutes at a time and stand thirty minutes, but that taking those makes her sleepy (Tr. 61).

In his written opinion at step four, the ALJ summarized the claimant's hearing testimony and the medical evidence. He noted that the claimant had consistently complained of bilateral foot tingling and various aches and pains, and the later

development of chest pain (Tr. 17-18). As to her mental impairments, he noted the state reviewing physician opinions that she did not have a severe impairment, but found they "did not adequately consider the claimant's subjective complaints on anxiety and depression in relation to her fibromyalgia" (Tr. 18). He noted that she did not have a formal diagnosis or any related treatment records, but gave her the benefit of the doubt after considering her chronic pain and discomfort (Tr. 20). As to Dr. Hinkle's fibromyalgia statement, the ALJ summarized this indication, but gave it "little weight," noting that it was inconsistent with his own treating notes (and cited the exhibit numbers), Dr. Deneke's findings and suggestions, as well as Dr. Schatzman's examining opinion (Tr. 18). The ALJ then found that the claimant's assertions regarding her limited ability to sit, stand, and walk were not reflected in the record, that she had zero fibromyalgia tender points during Dr. Schatzman's examination, and that her symptoms were exacerbated by weight gain. As to her chronic pain, he noted that it had waxed and waned with her symptoms, but appeared to be adequately controlled by medication. He then found that, even giving her the "benefit of the doubt" as to her symptoms and limitations, the claimant could still perform an RFC of a limited range of light work (Tr. 20). He thus found the claimant not disabled (Tr. 21).

The claimant first contends that the ALJ failed to properly analyze Dr. Hinkle's opinion as a treating physician. The Court finds that the ALJ did not, however, commit any error in his analysis. He noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including Dr. Hinkle, who was the only physician to impose any physical limitations on the claimant that were

inconsistent with her RFC. As Dr. Hinkle was a treating physician, the ALJ was required to give his medical opinion controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that his opinion was not entitled to controlling weight, he was nevertheless required to determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. Those factors are: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject any of Dr. Hinkle's medical opinions entirely, he was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ's analysis of the opinion of Dr. Hinkle is set forth above. The undersigned Magistrate Judge finds that the ALJ considered his opinion in accordance

with the appropriate standards and properly concluded it was entitled to little weight. The ALJ thus did not commit error in failing to include any limitations imposed by Dr. Hinkle in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight he gave to Dr. Hinkle's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.").

As to the claimant's second contention regarding the RFC assessment, the court finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, specifically the assessments noting bilateral foot tingling, back pain, joint pain, fibromyalgia, anxiety, depression, obesity, and chest pains, *then adopted* any limitations suggested in the medical record, *and still concluded* that she could perform light work. When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine

RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. The ALJ specifically noted every medical record available in this case, *and still concluded* that she could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**